# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**SHARON M. EDWARDS**                                                      **PLAINTIFF**

**v.**                        **CASE NO. 4:25-CV-00045-BSM**

**BAPTIST HEALTH,** *et al.*                                              **DEFENDANTS**

## ORDER

Defendants' motion for summary judgment [Doc. No. 24] is granted and Sharon Edwards's complaint is dismissed with prejudice.

## I.   BACKGROUND

Sharon Edwards is a black woman who started working at Baptist Health in 1998 and was assigned to be a staffing commander in 2020.  Resp. to Defs.' Statement of Undisputed Facts ("SUMF") ¶¶ 1, 10, Doc. No. 32.  When Edwards learned that other employees, classified as "sitters," received on-call pay for taking calls during off-duty hours, she asked if she would receive the same.  *Id*. ¶¶ 12–13;  Pl's. Br. Opp. Defs.' Mot. Summ. J. at 3 (Pl's. Br.), Doc. No. 31.  In response, she was informed that her position was not eligible for on-call pay.  SUMF ¶ 14.

In February 2022, Edwards was assigned to the newly created position of onboarding specialist for the internal travel team and reported to Kelley Hamby and Debra Langley.  *Id*. ¶¶ 15–18, 21.  In this role, she was responsible for submitting requisitions for internal travel positions, processing applications, scheduling interviews, screening applicants, and managing applicants in the tracking system.  *Id*. ¶ 19.  In May 2023, Langley learned that Edwards was

working remotely for some portion of her work-week and that she was not working the standard 8:00 a.m. to 5:00 p.m. schedule. *Id.* ¶¶ 27–29; Defs.' Ex. 7. Langley notified Edwards that she had fourteen days to begin working in-person from 8:00 a.m. to 5:00 p.m., Monday through Friday. *Id.* ¶ 31.

Edwards had access to Baptist Health's computer system, but had to teach herself how to use it. SUMF ¶¶ 53–54. Despite having access to the system, she had difficulties using it. *Id.* ¶¶ 55–56. Edwards voluntarily resigned in December 2023. *Id.* ¶ 58.

Edwards is suing Baptist Health, Kelley Hamby, and Debra Langley for race discrimination under 42 U.S.C. section 1981 and defendants are moving for summary judgment.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in her pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

### III.  DISCUSSION

Edwards's complaint alleges defendants discriminated against her by (1) refusing to permit her to leave work early to attend school, (2) failing to give her on-call pay, (3) requiring her to  return to in-person work with a set schedule, and (4) denying her access to the computer database.   Summary judgment is granted on all claims.

Edwards lacks direct evidence of discrimination so she must show that discrimination can be inferred from defendants' actions.  *See Harris v. Hays,* 452 F.3d 714, 717–18 (8th Cir. 2006); *see also Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056 (8th Cir. 1997) (Title VII and section 1981 discrimination cases involve the same three-part *McDonnell Douglas* framework).  This requires her to establish a prima facie case of discrimination.  *Id.*  If she does so, defendants must provide legitimate non-discriminatory reasons for their actions.  *Id.* Edwards must then show defendants' reasons are pretext for discrimination.  *Id.*

To establish a prima facie case, Edwards must show that (1) she is a member of a protected class; (2) she met defendants' expectations; (3) she suffered an adverse employment action; and (4) the circumstances create an inference of discrimination.  *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 964 (8th Cir. 2023); *see also Kim,* 123 F.3d at 1056 (Title VII and section 1981 discrimination elements are identical). Thus, the chief issue presented is whether a reasonable juror could infer discrimination from the evidence presented.  This is the case because the first and second elements are undisputed and the record is fairly clear that Edwards meets the third element.

A.    Leave to Attend School

Summary judgment is granted on Edwards's claim that defendants denied her request to leave work early to attend school because she concedes this claim is time barred. Pl's. Br. at 3.

B.    On-Call Pay

Summary judgment is granted on Edwards's claim against Hamby and Langley for failing to give her on-call pay because she has alleged no facts against them.  *See Jones v. Forrest City Grocery Inc.*, 564 F. Supp. 2d 863, 869 (E.D. Ark. 2008) (individuals are personally liable under section 1981 if they were personally involved in the discrimination).

Summary judgment is granted on Edwards's claim against Baptist Health for failing to give her on-call pay because Edwards has failed to make out a prima facie case.  To infer discrimination, Edwards points out that "sitters" received on-call pay but she did not.  Pl's. Br. at 3–4.  Although a pay disparity among comparators can infer discrimination, *see Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 717 (8th Cir. 2012), the pay disparity cited by Edwards does not support an inference of discrimination.  This is true because Edwards was not similarly situated to the employees who received on-call pay, *see Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 809 (8th Cir. 2020) (comparator must be similarly situated in all relevant respects).  Indeed, Edwards was a "staffing commander," which is a totally different position than "sitter," the position that received on-call pay. Despite this difference, Edwards might have established that she was similarly situated to the "sitters" if she had provided proof that she and the sitters reported to the same supervisor, performed similar

duties, had similar work schedules, had similar qualifications, and were of different races; but Edwards failed to meet this burden. *See id.*

Even if Edwards could establish a prima facie case, Baptist Health has provided a legitimate nondiscriminatory reason for not giving her on-call pay: staffing directors are not expected to work outside of normal business hours and on-call pay is reserved for positions in which the employee is expected to work outside of normal business hours. Mot. Summ. J. (MSJ), Doc. No. 24, Ex. 2.

Edwards states this is pretext because her supervisor knew she was working extra hours and that she was allowed to work outside her scheduled hours. This argument fails for two reasons. First, it does not address the fact that she was not a sitter and there is no showing that her position and the sitter position were similarly situated in all respects. Second, there is no evidence in the record showing the race of the employees who served as sitters. *See Colyer v. Leadec Corp.*, 2024 WL 81183 at *10 (E.D. Mo. Jan. 8, 2024) ("similarly situated employee must be of a 'different race' for a race discrimination claim") (citing *Fair v. Norris*, 480 F.3d 865 (8th Cir. 2007)). For these reasons, Edwards has not shown pretext.

C.     In-Person Mandate and Schedule Change

Summary judgment is granted on Edwards's claim that she was mandated to work in-person on a set schedule because she has failed to make out a prima facie case. This is true because the record does not support Edward's claim that discrimination can be inferred. To infer discrimination, Edwards points to Jenny Nash as a similarly situated employee who was

allowed to work remotely and was not ordered to work in-person full time. Nash is a white woman who served as the central staffing manager for the central scheduling team. She worked with external contract nurses, staffing agencies, monitored nursing licenses, and oversaw timekeepers. *Id*. ¶¶ 41–44. Edwards, on the other hand, worked with internal contract nurses, requisitions, interviews, and on-boarding. MSJ, Ex. 1, Edwards Depo 142:1–20. Although Nash and Edwards performed some of the same duties, there were many tasks that were different, and Edwards concedes that she and Nash had different positions and different job duties. *Id*. For example, Nash supervised at least two timekeepers, while no one reported to Edwards; and Edwards on-boarded staff, monitored CPR certifications, and conducted interviews, while Nash did not. *Id*. at 142:1–14, 155:16–156:4. Although this is a closer call than the other issues presented, based on stacks of Eighth Circuit precedent, Nash and Edwards are not similarly situated in all relevant respects. *Williams*, 963 F.3d at 809 (comparator must be similarly situated in all relevant respects).

Even if Edwards could make out a prima facie case, defendants have provided a legitimate nondiscriminatory reason for requiring Edwards to work in person during normal business hours. Defendants point out that Edwards's hiring numbers were insufficient and that she had expressed confusion regarding her duties. Defendants argue that Edwards was brought back to the office full time to alleviate these issues, and defendants point out that Langley made this decision very soon after learning Edwards was not in the office full time. SUMF ¶¶ 25–26, 29.

Edwards states this is pretext because she worked in the office most of the time even before she was required to come back full-time, and Langley was aware that Edwards worked from home well before she claimed that she did not know.  In support of her position, Edwards points to emails from November 2022.  Pl's. Br., Ex 3, Emails.  These emails, however, do not show that Edwards was working from home.  Edwards also argues that Baptist Health's response to her Equal Employment Opportunity Commission charge of discrimination  implies that white employees were permitted to work from home.  Pl's. Br. at 12. While that is not an accurate depiction of the response, even if it were, the white employees that Edwards contends were allowed to work remotely are not similarly situated to her.  *See Onyiah,*, 684 F.3d at 717 (similarly situated in all respects is a rigorous standard at pretext stage).  For example, Nash held a different position on a different team than Edwards and performed different duties such as overseeing timekeepers and working with external staffing agencies.   SUMF ¶ 41; MSJ, Ex. 1, Edwards Depo 142:1–20.

D.      Database Access

Summary judgment is granted on Edwards's database access claim because she has failed to make out a prima facie case.  Edwards alleges she was not given the same access to the computer database that other employees were given.

Defendants argue that, even if this were true, it was not an adverse employment action.  This argument is not convincing because it would be an adverse employment action if defendants intentionally failed to provide Edwards with the tools to perform her job.  *See Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 356–59 (2024)(plaintiff must only

show "some injury respecting her employment terms or conditions" and not that the harm was significant, serious, or substantial); *Woods v. Collins*, 150 F.4th 967, 972 (8th Cir. 2025) ("'some harm respecting an identifiable term or condition of employment'" such as it being used for a "reduction in pay, transfer, or other change to a term or condition" of employment).

Although failing to provide access to the database would be an adverse employment action, the record does not show that Baptist Health gave similarly situated white employees greater access to its computer database than it gave to Edwards. It is undisputed that Edwards had access to the computer database, SUMF ¶ 54; MSJ, Ex. 1, Edwards Depo 174:12–24, but Edwards states that white employees, Nash, Julie Wilkinson, and Lesa Lawrence had greater access than she had. The problem with this comparison is that Edwards does not know what access those employees actually had to the database. MSJ, Ex. 1, Edwards Depo 180:6–14. Without that information, there is no evidence they were given more access than she was given.

Even if Edwards can make out a prima facie case, defendants have provided a legitimate nondiscriminatory reason for Edwards's difficulties accessing the database. Defendants point out that any lack of access that Edwards had was not the result of defendants limiting her access. It was due to the fact that she taught herself how to use the computer system and she simply had technical issues that prevented her from accessing the database. Edwards does not argue that this is pretext.

8

## IV.  CONCLUSION

For these reasons, defendants' motion for summary judgment is granted and Edwards's complaint is dismissed with prejudice.

IT IS SO ORDERED this 8th day of July, 2026.

UNITED STATES DISTRICT JUDGE